IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| MARIO A. PEREZ, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § CIVIL NO. 1:13-CV-149 |
| | § |
| ADOLFO VALDEZ, Individually and | § |
| d/b/a CIRCLE OF FRIENDS ADULT | § |
| DAY CARE and AIDA VALDEZ, | § |
| Individually and d/b/a CIRCLE OF | § |
| FRIENDS ADULT DAY CARE, | |
| | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

BE IT REMEMBERED, that on September $\mathcal{26}$, 2014, the Court considered Plaintiff's motion for conditional certification and notice to potential opt-in plaintiffs under the collective action provision of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). Dkt. No. 8.

### I. Background

Defendants Adolfo and Aida Valdez own and operate Circle of Friends Adult Daycare (collectively "Circle of Friends") which operates facilities in San Benito, Mission, Elsa, and Socorro, Texas. *See* Compl. ¶¶ 1, 7–8, Dkt. No. 1. Plaintiff Mario A. Perez (Perez) worked for Circle of Friends as a driver/attendant in the San Benito facility from in or around October, 2011 through in or around September, 2012. Compl. ¶ 12; Decl. of Mario A. Perez ¶ 2, Dkt. No. 8 Ex. 1. According to the complaint, "Perez typically spent his workweek driving Defendants' adult day care clients between their homes and Defendants' facilities, [sic] between Defendants' facilities for special events and generally attending to Defendants' adult day care clients' needs while on site and Defendants' facilities." Compl. ¶ 14. Perez alleges that he routinely worked more than 40 hours per week, but Circle of Friends paid

him for eight hours per day, five days per week regardless of how many hours he actually worked. *See id.* ¶¶ 17–19. Perez alleges that he worked so many hours in some weeks that his hourly wage fell below the $7.25 per hour federal minimum wage. *See id.* ¶ 19. He seeks an award of damages under the FLSA's minimum-wage and overtime provisions. *See* 29 U.S.C. §§ 206(a), 207(a)(1).

Perez has filed a motion and proposed notice to potential opt-in plaintiffs asking the Court to certify conditionally an FLSA collective action and provide notice to all driver/attendants employed by Circle of Friends within the three years preceding the filing of the complaint in this action. Dkt. No. 8 & Ex. 3. He asserts that Circle of Friends employed other driver/attendants in the past three years who performed the same or similar duties, and Circle of Friends capped their hours at 40 per week regardless of hours actually worked. *See* Compl. ¶¶ 22–25. In separate written responses, Circle of Friends argues that Perez has failed to show that a collective action should be certified, Dkt. No. 11, and objects to the form of the proposed notice, Dkt. No. 12.

## II. Conditional Certification

In his complaint, Perez defines the proposed class as "All driver/attendants employed by Defendants at any time within the 3 years preceding the filing date of this complaint through the time of trial and whose principal duties include(d) driving Defendants' adult day care clients between their homes and Defendants' facilities, [sic] between Defendants' facilities for special events and generally attending to Defendants' adult day care clients' needs while on site and Defendants' facilities." Dkt. No. 1 ¶ 26. In a declaration attached to his motion for conditional certification, Perez states that at least six other driver/attendants worked in Circle of Friends's San Benito facility. Dkt. No. 8 Ex. 1 ¶ 6. He continues:

The other driver/attendants and I would often discuss our hours and the fact that we did not get paid any overtime. I know from working with and talking to these other driver/attendants that they had the same job duties as me and did not get paid any overtime. A couple of these driver/attendants have told me they would be interested in getting back pay for their overtime but they are afraid of losing their jobs with Circle of Friends.

*Id.*

Circle of Friends maintains that Perez has failed to show that any similarly-aggrieved class members affected by a common policy or practice exist, and resolution of any other driver/attendant's claims will require highly individualized testimony about facts unique to the individual employee, making a collective action unmanageable. They rely primarily on the deposition and declaration of Ana Flores (Flores), the director of Circle of Friends's San Benito facility. *See* Dkt. No. 11 Ex. A ¶ 2 (setting forth Flores's role but omitting date on which she began working in that capacity). Flores states that "[a]s a driver, Perez's responsibilities were to pick up clients in the morning, drive them to the Center, drive them to various doctor [sic] appointments or activities during the day, and return them to their homes in the afternoon." *Id.* ¶ 4. Circle of Friends paid Perez "$320 a week for a fixed 40 hours . . . . He was paid the same wage every week even if he worked less time." *Id.* According to Flores, Circle of Friends considered Perez nonexempt and eligible for overtime pay, and he had to "correct" his record of hours or notify her if he worked more than 40 hours in a week or during his lunch break. *Id.* ¶ 8. Flores avers that Perez did neither. *See id.* Finally, Flores concludes in a separate paragraph that "[d]rivers are paid bi-weekly. All drivers, including Mario A. Perez are paid for 40 hours every week, even if they work less. Circle of Friends manages its overtime so that no driver works over 40 hours in a work week." *Id.* ¶ 15.

## A. Governing Law

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1527 (2013). By its terms, the FLSA allows "one or more employees for and in behalf of himself or themselves and other employees similarly situated" to bring a private civil suit to recover damages for violations of these provisions of the FLSA. 29 U.S.C. § 216(b) (2012); *accord. Genesis Healthcare*, 133 S. Ct. at 1527. Courts often refer to FLSA actions brought by an employee for and on behalf of other employees under this provision as "collective actions." *Genesis Healthcare*, 133 S. Ct. 1527 (citing *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S.

165, 169–70 (1989)). Properly utilized, "[a] collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity." *Hoffman-La Roche,* 493 U.S. at 170; *see also id.* at 167–68 (construing § 216(b) incorporated into the Age Discrimination in Employment Act of 1967, 81 Stat. 602, as amended); *Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1212 (1995) (citation omitted) (noting that "The ADEA, at 29 U.S.C. § 626(b), explicitly incorporates section 16(b) of the Fair Labor Standards Act").

District courts generally take one of two recognized approaches to collective actions under the FLSA. *Mooney* 54 F.3d at 1213 (observing that "[t]he district court cases seem to divide along two basic lines"); *McKnight v. D. Houston, Inc.,* 756 F. Supp. 2d 794, 800 (S.D. Tex. 2010) ("Courts recognize two methods to determine whether to authorize notice to similarly situated employees advising them of their right to join an FLSA collective action."). On the one hand, some courts follow a line of authority associated with *Shushan v. University of Colorado at Boulder,* 132 F.R.D. 263 (D. Colo. 1990) which "espouses the view that § 16(b) of the Fair Labor Standards Act (FLSA) merely breathes new life into the so-called 'spurious' class action procedure previously eliminated from FED. R. CIV. P. 23." *Mooney,* 54 F.3d at 1214. This approach treats certification of a collective action under the FLSA and certification of a class under Rule 23 identically, requiring the plaintiff to establish numerosity, commonality, typicality, and adequate representativeness. *Id.*; *Ryan v. Staff Care, Inc.,* 497 F. Supp. 2d 820, 823 (N.D. Tex. 2007). On the other hand, following the approach of the path-marking case of *Lusardi v. Xerox Corp.,* 118 F.R.D. 351 (D. N.J. 1987), "[m]ost courts, including district courts in this circuit, use the 'two-step ad hoc approach' as the preferred method for the similarly situated analysis rather than the Rule 23 requirements." *McKnight,* 756 F. Supp. 2d at 800 (collecting cases).

Perez asks this Court to utilize the two-stage *Lusardi* approach, but, although Circle of Friends does not expressly argue that this Court should follow the

*Shushan* approach, they rely on several cases applying Rule 23 and even class-action cases decided by the Texas Supreme Court. Though it has recognized the two main approaches under § 216(b), the Fifth Circuit has "not ruled on how district courts should determine whether plaintiffs are sufficiently 'similarly situated' to advance their claims together in a single § 216(b) action," but it has "clearly held that not all Rule 23 class action standards are applicable to § 216(b)." *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 518–19 & N.1 (5th Cir. 2010) (per curiam) (citing *LaChapelle v. Owens–Ill., Inc.*, 513 F.2d 286, 288 (5th Cir. 1975)). That holding recognizes the differences between opt-out class actions under Rule 23 and opt-in actions under the FLSA. *See LaChapelle*, 513 F.2d at 286, 288 (footnote omitted) ("Rule 23(c) provides for 'opt out' class actions. FLSA § 16(b) allows as class members only those who 'opt in.' These two types of class actions are 'mutually exclusive and irreconcilable.'"). The Supreme Court recently grounded its mootness analysis of an FLSA plaintiffs' claims in part on the similar proposition that "Rule 23 class actions are fundamentally different from collective actions under the FLSA." *Genesis Healthcare*, 133 S. Ct. at 1529 (citing *Hoffman-LaRoche*, 493 U.S. 165 at 174–77 (Scalia, J., dissenting)) (distinguishing Rule 23 cases). In contrast to the effect of certifying a class under Rule 23, "The sole consequence of conditional certification is the sending of court-approved written notice to employees who in turn become parties to a collective action only by filing written consent with the court." *Id.* at 1530 (internal citations omitted); *see also* 29 U.S.C. § 216(b) (2012) (requiring written consent for an employee to become a plaintiff in a collective action). The Fifth Circuit has described the *Lusardi* approach—an approach which takes account of the "fundamental difference" between FLSA opt-in collective actions and Rule 23 class actions, *id.* at 1529—as the way in which FLSA collective actions "typically proceed." *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 N. 2 (5th Cir. 2008); *see also Tolentino v. C & J Spec-Rent Servs., Inc.*, 716 F. Supp. 2d 642, 647 (S.D. Tex. 2010) (relying on this language from *Sandoz* when deciding to apply *Lusardi* two-step approach). As the Fifth circuit recognized in that dictum, most district courts utilize the *Lusardi* approach. *See Lee v. Metrocare Servs.*, 980

F. Supp. 2d 754, 758 (N.D. Tex. 2013) (citing *Ryan,* 497 F. Supp. 2d at 824) ("A majority of federal courts, including [the Northern District of Texas], have applied the *Lusardi* approach."); *Walker,* 880 F. Supp. 2d at 465 (collecting cases and stating "most courts use the *Lusardi* approach, including this one"; *McKnight,* 756 F. Supp. 2d at 800 (collecting cases); *Tolentino,* 767 F. Supp. 2d at 646 (collecting cases and stating that "courts in this District follow the *Lusardi* approach rather than the *Shushan* approach"). Today, this Court joins the majority of district courts and, based on the foregoing authority, adopts the *Lusardi* two-stage approach.

"*Lusardi* and its progeny are remarkable in that they do not set out a definition of 'similarly situated,' but rather they define the requirement by virtue of the factors considered in the [two-stage] analysis." *McKnight,* 756 F. Supp. 2d at 801 (quoting *Mooney,* 54 F.3d at 1213) (alterations in original). At the first *Lusardi* stage (the notice stage), "the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members." *Mooney,* 54 F.3d at 1213–14. The district court makes its stage one decision by "determin[ing] whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." *Acevedo,* 600 F.3d at 519 (citing *Mooney,* 54 F.3d at 1213–14). At this stage, the district court typically "has minimal evidence before it," *Mooney* 54 F. 3d at 1214, and a stage-one decision is therefore frequently based "only on the pleadings and affidavits that have been submitted."[1]

---

[1]      Perez filed his motion for conditional certification on the deadline set in the scheduling order. *See* Dkt. No. 7 at 1. He had an opportunity to conduct approximately six weeks of discovery prior to filing that motion, *see id.,* but nothing prevented him from filing a motion for conditional certification earlier in this case. Indeed, Perez attaches to his motion for conditional certification an order entered at an initial scheduling conference before discovery commenced conditionally certifying a collective action under § 216(b). *See* Ct. Order, *Garcia-Herrera v. MC Taqueria Siberia,* No. 1:12-CV-71 (S.D. Tex. Sept. 19, 2012), *available in the instant action at* Dkt. No. 8 Ex. 2 (Morgan, Mag. J.). In their objections to the proposed notice to potential opt-in plaintiffs, Circle of Friends suggests that the Court ought to factor the opportunity to conduct discovery into its conditional-certification analysis, but they do not ask the Court to apply the intermediate standard of scrutiny some courts utilize when the plaintiff has conducted sufficient discovery. *See, e.g., Nieddu v. Lifetime Fitness, Inc.,* 977 F. Supp. 2d 686, 692 (S.D. Tex. 2013) (quotation and citations omitted) (discussing cases in which intermediate evidentiary standard applied after plaintiff had opportunity to conduct discovery and stating that "courts have not established the exact quantity of evidence the plaintiff must

*McKnight*, 756 F. Supp. 2d at 801. Consequently, "this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." *Mooney*, 54 F.3d at 1214 (footnote omitted); *McKnight*, 756 F. Supp. 2d at 801 (citation omitted). Later, in the second *Lusardi* stage, "after discovery is largely complete and more information on the case is available, the court makes a final determination of whether all plaintiffs are sufficiently similarly situated to proceed together in a single action." *Acevedo*, 600 F.3d at 519 (citing *Mooney*, 54 F.3d at 1214). However, at no point in the certification process may the court "address the merits of the claims . . . by ruling on factual disputes or making credibility determinations." *Nieddu v. Lifetime Fitness, Inc.*, 977 F. Supp. 2d 686, 691 (S.D. Tex. 2013) (citing *Mooney*, 54 F.3d at 1214); *accord. McKnight*, 756 F. Supp. 2d at 801 (citations omitted).

In the instant motion, Perez seeks conditional certification at the first *Lusardi* stage. At this stage, courts ordinarily "require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Tolentino*, 716 F. Supp. 2d at 646 (quoting *Mooney*, 54 F.3d at 1214). In order to realize the economies of scale which justify use of the collective-action procedure, the plaintiff must make a showing of "some identifiable facts or legal nexus [that] bind the claims so that hearing the cases together promotes judicial efficiency." *McKnight*, 756 F. Supp. 2d at 801 (quoting *Barron v. Henry Cnty. Sch. Sys.*, 242 F. Supp. 2d 1096, 1103 (M.D. Ala. 2003)) (other citation omitted); *see also Hoffman-LaRoche*, 493 U.S. at 170. Thus, as a general matter, the plaintiff has the burden at the first *Lusardi* stage to show that: "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant

submit, it is more than the minimal showing of a reasonable basis for the plaintiff's allegation(s)"). The Court therefore expresses no view on this issue. Because significant additional discovery needs to be completed, the Court declines to apply a heightened standard here. *See McKnight*, 756 F. Supp. 2d at 802–03 (quoting *Mooney*, 54 F.3d at 1214) (holding that "[t]he fact that some discovery has been conducted does not increase the plaintiffs' burden at this first, conditional certification stage to the more onerous standard that applies at the second, decertification stage. That standard is only appropriate 'after discovery is largely complete and the matter is ready for trial.'").

respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit." *Tolentino*, 716 F. Supp. 2d at 647 (quoting *Morales v. Thang Hung Corp.*, No. 4:08-2795, 2009 WL 2524601, at \*2 (S.D. Tex. Aug. 14, 2009)); *accord. Walker*, 812 F. Supp. 2d at 466 (citations omitted); *McKnight*, 756 F. Supp. 2d at 801. "This standard is 'less stringent' than the Rule 23 class action requirements." *Tolentino*, 716 F. Supp. 2d at 647 (quoting *Cantu v. Vitol, Inc.*, No. H-09-0576, 2011 WL 486289, at \*3 (S.D. Tex. Feb. 7, 2011)). Section 216(b) does not expressly require the third element, and some courts do not make the plaintiff establish it. *Nieddu*, 977 F. Supp. 2d at 690. That is, "[a] court may deny a plaintiff's right to proceed collectively only if the action arises from circumstances purely personal to the plaintiff and not from any generally applicable rule, policy, or practice." *Id.* at 691 (quoting *Ryan,* 497 F.Supp.2d at 824–25 and citing *Tolentino*, 716 F.Supp.2d at 647 and *McKnight*, 756 F.Supp.2d at 801).

## B. Analysis

Perez has carried his light burden to show that a class of similarly-situated driver/attendants affected by an alleged common practice of managing driver/attendant hours to avoid paying overtime exists.

### 1. Other Aggrieved Employees

Regarding the existence of other aggrieved employees who wish to opt in, Perez declares under penalty of perjury that at least six other drivers who worked for Circle of Friends had the same job duties as he did, and they wished to be paid for overtime hours worked but feared losing their jobs. *See* Dkt. No. 8 Ex. 1 ¶ 6. Circle of Friends objects to this statement calling it self-serving and too general to permit the Court to conclude that any other driver/attendant worked more than 40 hours in a week during the last three years. *See Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887 (11th Cir. 1983) ("The [district] judge had before him only counsel's unsupported assertions that FLSA violations were widespread and that additional plaintiffs would come from other stores."); *Xavier v. Belfour USA Grp., Inc.*, 585 F. Supp. 2d 873, 877 (E.D. La. 2008) ("Although the 'similarly situated' standard is lenient at the notice stage, general allegations that the employer violated the FLSA

are insufficient"). Perez supplies to the best of his recollection[2] the names of four of the six driver/attendants who complained of not being paid overtime, however. *See* Perez Decl. ¶ 6. An FLSA plaintiff's declaration that other similarly-situated "employees complained of not being compensated for their overtime hours . . . provide a basis for Plaintiff's belief that aggrieved individuals exist who may be owed overtime compensation" and is specific enough to support a *Lusardi* stage-one certification. *Villareal v. St. Luke's Episcopal Hosp.*, 751 F. Supp. 2d 902, 912, 918 (S.D. Tex. 2010) (relying in part on these statements in plaintiff's affidavit and denying motion to strike because statements were sufficiently specific, not legal conclusions that FLSA was violated). Adding plausibility to Perez's declaration, Flores states that drivers in the San Benito facility usually took a three-hour break between 10 a.m. and 1 p.m. *See* Flores Decl. ¶¶ 4, 7. Nothing in the record suggests that driver/attendants could not have discussed their concerns at some point during one of these three-hour breaks. Therefore, Perez's and Flores's declarations taken together provide a reasonable basis to credit the complaint's general allegations that other Circle of Friends driver/attendants worked more than 40 hours in a week and want to opt in to this lawsuit. *See Villareal*, 751 F. Supp. 2d at 918.

## 2. Similarly Situated

Perez also has shown that he and the other driver/attendants are sufficiently similarly situated to one another under § 216(b). In this context, "[s]imilarly situated does not necessarily mean identically situated." *England v. New Century Fin. Corp.*, 370 F.Supp.2d 504, 507 (M.D. La. 2005) (footnote omitted). Rather, the plaintiff must show only that he and the employees in the proposed class are "similarly situated in terms of job requirements and similarly situated in terms of payment provisions." *Ryan*, 497 F. Supp. 2d at 825 (citing *Dybach v. Fla. Dept. of Corr.*, 942 F.2d 1562, 1567–68 (11th Cir. 1991)); *see also, e.g., Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 862 (S.D. Tex. 2012) (quoting and applying this standard from *Ryan*); *Walker*, 870 F. Supp. 2d at 468 (same). Conversely, "if the job duties

---

[2] Perez gives only the first names of some of these driver/attendants because he cannot recall their last names.

among potential members of the class vary significantly, then class certification should not be granted." *Walker*, 860 F. Supp. 2d at 468 (quoting *Dreyer v. Baker Hughes Oilfield Operations, Inc.*, No. H–08–1212, 2008 WL 5204149, at *2 (S.D. Tex. Dec. 11, 2008) (other citations omitted); *see also Aguirre v. SBC Commc'ns, Inc.*, No. H–05–2198, 2007 WL 772756, at *9 (S.D. Tex. Mar. 12, 2007) (holding that plaintiffs are not similarly situated when their job duties vary "substantially"). Nonetheless, "[T]he 'similarly situated' requirement of § 216(b) is more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance)[, so] a unified policy, plan, or scheme of discrimination may not be required to satisfy . . . § 216(b)." *Heeg*, 907 F. Supp. 2d at 862 (quoting *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1095 (11th Cir. 1996) (alterations in original, other citation omitted).

Here, Perez's complaint and declaration show at this stage that the other driver/attendants are similarly situated with regard to job duties and Circle of Friends's pay policy, and Flores's declaration does as well. In *Walker*, *supra*, the plaintiffs filed affidavits showing that a group of "Crane Operators were responsible for operating cranes . . . [and] that Roughneck/Riggers did the same thing at the same location: heavy labor assembling and disassembling rigs for [defendant] at its 35,000 square foot warehouse fabrication show and 20–acre rig-up facility." 870 F. Supp. 2d at 468 (internal citations and quotation marks omitted). The *Walker* court conditionally certified a class of similarly-situated crane operators and a second class of roughneck/riggers owing to the demonstrated differences in required skill and job duties between the two groups. *See id.* at 469. It concluded the crane operators were similarly situated to one another based on the plaintiffs' declarations that they "worked at the same facility, operated cranes, and were subject to a policy of not being paid overtime." *Id.* In the case at hand, Perez declares that, based on his conversations with them, he and the other driver/attendants at Circle of Friends's San Benito facility had the same job duties. *See* Perez Decl. ¶ 6. Circle of Friends does not challenge his assertion that all of the driver/attendants to which he refers worked at the same facility. *See id.* Rather,

Flores, who directs the San Benito facility, also describes the duties of the "drivers" without differentiating among them in any way–all drivers had to pick up clients in the morning, drive them to appointments or special events, and take them home in the afternoon. *See* Flores Decl. ¶ 4. She also describes how the drivers were paid as a group. *See id.* ¶ 15. This evidence suffices at this stage to show that all the driver/attendants worked at the same facility, performed the same job duties, and allegedly were affected by what Flores describes as Circle of Friends's practice of "managing drivers' overtime hours". Flores Decl. ¶ 15; *Walker*, 870 F. Supp. 2d at 469.

"Courts have refused to permit FLSA suits to proceed as collective actions if the individualized inquiries required would eliminate 'the economy of scale envisioned by the FLSA collective action procedure.'" *McKnight*, 756 F. Supp. 2d at 804 (quoting *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1275 (M.D. Ala. 2004)); *see also Nieddu*, 977 F. Supp. 2d at 691 (requiring denial of motion to certify if claim is "purely personal to the plaintiff"). Circle of Friends argues that the determination of each potential opt-in plaintiff's claims will require an individualized, fact-intensive consideration of the compensability of the individual driver/attendant's hours and other potential defenses. Additionally, it maintains that Perez improperly defines the class. Properly defined, the class should consist of "the current or former driver/attendants, paid a weekly wage, who worked compensable hours over 40 in a workweek and were not paid overtime." Resp. to M. to Certify ¶ 36 Dkt. No. 11. Thus, as Circle of Friends sees the matter, deciding whether a driver/attendant belongs in the class will require a fact-intensive inquiry into the compensability of his or her time worked, further demonstrating that this case is unsuitable for collective adjudication. *See, e.g., Morisky v. Public Service Elec. and Gas Co.*, 111 F. Supp. 2d 493, 498–99 (D.N.J. 2000) (denying certification when applying burden akin to second *Lusardi* stage and opining that "the scope of the class is dependent upon the answer to the question that is at the heart of this case-which employees are properly classified as exempt" after concluding that plaintiffs produced insufficient evidence that they had similar job responsibilities).

Circle of Friends's own evidence, however, supports Perez's assertion that a common policy or practice exists. *See Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 535 (S.D. Tex. 2008) (quoting *Simmons v. T–Mobile*, No. H–06–1820, 2007 WL 210008, at *8 (S.D. Tex. Jan. 24, 2007) ("Ultimately, the Court believes that, at a minimum, there must be 'meaningful, identifiable facts or legal nexus [that] bind the claims'") (alterations in original); *Dreyer*, 2008 WL 5204149, at *3 (holding that "[w]hile the presence of a single decision, policy, or plan is often good evidence that employees are similarly situated," such evidence is not required in every case). To illustrate its arguments, Circle of Friends proffers Flores's analysis of Perez's time sheet and driving log for the week of Thanksgiving of 2011. *See* Dkt. No. 11 Ex. A. Her calculations ostensibly establish that he worked fewer than 40 compensable hours in that week. *See id.* ¶¶ 10–11; *see also id.* pp. 25–31.[3] Elsewhere in her declaration, Flores states that Perez "was paid $320 per week for a fixed work week of 40 hours." Flores Decl. ¶ 5. Additionally, she opines that "Circle of Friends always pays driver/attendants for a 40-hour work week even if the driver/attendant works fewer hours and Circle of Friends manages its driver/attendants' hours so that no driver/attendant works more than 40 hours per week." *Id.* ¶ 15.

Perez's claims and those of the proposed class center on the common policy described by Flores. *Id.* He alleges that Circle of Friends in practice caps weekly wages at 40 hours regardless of hours worked. *See* Compl. ¶ 18. Additionally, he declares that he repeatedly complained to Olga Garza (Garza), a Circle of Friends employee at the San Benito facility, about not being compensated for overtime hours, and she told him that she could do nothing about it.[4] *See* Perez Decl. ¶ 7. At this early stage, this evidence coupled with Perez's statement that driver/attendants' complaints about not being paid for overtime hours sufficiently corroborates his allegation that Circle of Friends "had a policy to violate the policy"

---

3    Circle of Friends does not internally paginate this exhibit. Citations refer to page numbers produced by the Court's Electronic Case Management System.
4    Although Flores notes that Garza did not have the authority to hire, fire, or discipline driver/attendants, she does not contend that Garza miscommunicated Circle of Friends's policy or practice. *See* Flores Decl. ¶ 14.

(if any) on payment of overtime hours. *Mahoney v. Farmers Ins. Exchange*, No. 4:09-CV-2327, 2011 WL 4458513, at *8 (S.D. Tex. Sept. 23, 2011) (quoting *Thompson v. Speedway SuperAmerica, LLC*, No. 08-CV-1107, 2009 WL 130069 (D. Minn. Jan. 20, 2009) (denying motion to decertify class at second *Lusardi* stage based on plaintiffs' deposition testimony and other evidence of a de facto policy notwithstanding formal policy requiring recording and payment of overtime hours); *see also Behnken v. Luminant Mining Co., LLC*, 997 F. Supp. 2d 511, 521 (N.D. Tex. 2014) (finding at *Lusardi's* first stage sufficient evidence of "factual nexus[:] . . . the alleged practice of Luminant's failing to pay overtime to workers who worked through meal breaks during the period between March 2012 and March 2013"). In the only other policy-related statement in her declaration, Flores states that employees had to notify her when they worked more than 40 hours in a week or worked during a lunch break. *See* Flores Decl. ¶ 6. She does not set forth the purpose of this notice. Since Flores admits that the policy about which Perez complains applies to all driver/attendants, *see id.* ¶¶ 5, 15, the record adequately supports, at this stage, a finding that a nexus of facts and law binds Perez's and the proposed class's claims, and Perez correctly defines a class to include the purportedly affected group of employees.

Indeed, Circle of Friends's arguments are essentially identical to those advanced by a large chain of coffee shops at the more stringent, second *Lusardi* stage in another overtime case. *Falcon, supra.* The plaintiffs there alleged, "that despite the official 'time worked is time paid' policy, Starbucks managers enforced an unwritten policy of encouraging or allowing [assistant store managers] to work off the clock in order to control overtime costs." *Id.* at 532. In their motion to decertify, the defendants argued "that individual 'mini-trials' [would] be needed to determine whether Plaintiffs' off-the-clock activities were compensable work, whether Defendants had actual or constructive knowledge of any off-the-clock work performed by Plaintiffs, whether some of the off-the-clock work is de minimis, and whether some of the work performed at charitable events was compensable or instead was voluntary as defined by 29 C.F.R. § 785.44." *Id.* at 540; *see also* Resp. to M. to Certify ¶ 27 Dkt.

No. 11. The *Falcon* court found those arguments unavailing, explaining that
"[c]ourts have allowed the use of representative testimony in cases involving
allegations of unpaid overtime."[5] *Id.* (collecting cases including *Brennan v. Gen.
Motors Acceptance Corp.*, 482 F. 2d 825, 829 (5th Cir. 1973) (in which the district
court permitted collective testimony in unpaid overtime case); *see also Rodolico v.
Unisys Corp.*, 199 F.R.D. 468, 484 (E.D.N.Y. 2001) ("[S]tanding alone, the prospect
of individual defenses should not defeat authorization of a collective action . . . .");
*Mahoney*, 2011 WL 4458513, at *12 (holding that defense could be resolved in
collective action with representative plaintiffs over objection that compensability of
time claimed by individual plaintiffs had to be determined case-by-case); *Green v.
Plantation of La.*, No. 2:10-0364, 2010 WL 5256354, at *11 (W.D. La. Nov. 24, 2010)
(rejecting argument that determining whether workers were properly classified as
independent contractors would be too individualized and fact intensive because
lease agreements to be interpreted were substantially similar to one another); *Wilks
v. Pep Boys*, No. 3:02-0837, 2006 WL 2821700, at *5 (M.D. Tenn. Sept. 26, 2006)
*aff'd*, 278 F. App'x 488 (6th Cir. 2008) (quoted in *Falcon*). The same can be said of
Circle of Friends's concerns about individualized determinations of common
defenses here. Assuming without deciding that Flores's declaration raises a
possible defense, her proof shows at most that "individual issues may, in the end,
render a collective action inappropriate, [and] the [Court] finds, as have other
courts, that consideration of these factual issues is more appropriately raised on a
motion to decertify the collective action once discovery has been conducted."[6] *Green*,
2010 WL 5256354, at *12 (collecting cases) (responding at first *Lusardi* stage to
affidavit showing possible defenses in FLSA overtime action); *accord. Behnken*, 997

---

[5]    The *Falcon* court also expressed its openness to bifurcation of the trial of liability and
damages if the appropriate showing was made. *See id.* at 540–41.
[6]    Cases applying the strictures of *Lusardi's* second stage do not control the resolution of this
issue. *See, e.g., Valcho v. Dallas Cnty. Hosp. Dist.*, 658 F. Supp. 2d 802, 812–13 (N.D. Tex. 2009)
(applying *Lusardi* second-stage standard to deny certification where plaintiff did not produce
evidence of other similarly-situated nurses who worked during mandatory lunch breaks but did not
report their time); *Bosco v. Wal-Mart Stores, Inc*, No. Civ. A. 00-3184, 2004 WL 1497709, at *4–*5, *7
(rejecting at second *Lusardi* stage effort to "make a corporate policy to keep employee wage costs low
as insufficient proof to justify the creation of a class of all Wal-Mart employees that have not been
properly paid overtime in the last three years").

F. Supp. 2d at 521 (citing *Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D.
278, 280 (N.D. Tex. 2008)) ("Although the need for individual testimony may become
apparent at a later stage of this lawsuit, it does not negate that plaintiffs have
presented a 'factual nexus' that binds the named plaintiffs and the potential class
members."); *see also Dreyer*, 2008 WL 5204149 at *4 (citing *Foraker v. Highpoint
Sw.*, No H-06-1856, 2006 WL 2585047, at *4 N.16 (S.D. Tex. Sept.7, 2006)) (holding
defendant's argument "that the potential applicability of several FLSA exemptions–
such as the administrative, computer employee, and highly compensated employee
exemptions–counsels against conditional certification because the court would need
to examine each employee's job duties to determine whether each exemption applies
. . . fails because exemptions are merits-based defenses to an FLSA claim").

Applying the lenient standard of the first *Lusardi* stage, the Court finds that Perez
has sufficiently shown that the proposed class is similarly situated enough to
warrant notice.

## III. Objections to Form of Proposed Notice to Potential Opt-In Plaintiffs

Circle of Friends objects on several grounds to the proposed notice to potential opt-
in plaintiffs attached to the instant motion. Dkt. No. 8 Ex. 3. The Court considers
them in turn.

First, Circle of Friends argues that the notice incorrectly defines the putative class
to include all driver/attendants who worked for it within a three-year period rather
than driver/attendants who worked more than 40 compensable hours and were not
paid overtime. *See* Dkt. No. 12 ¶ 7(a)–(b). For the reasons given *supra*, the Court
has determined that Perez correctly defines the putative class to include all
driver/attendants. *See* Flores Decl. ¶¶ 5, 15 (stating all driver/attendants hours are
managed so as not to exceed 40 hours per week). As for the remainder of this
argument, the length of the applicable limitations period to FLSA claims like the
ones advanced here depends upon whether the violation was willful. *Singer v. City
of Waco, Tex.*, 324 F. 3d 813, 821 (Fifth Cir. 2003); *see also* 29 U.S.C. § 255(a).
Ordinarily, the limitations period lasts two years, but a finding of willfulness

extends it to three years. *Id.* (citing § 255(a)). Perez alleges that Circle of Friends willfully violated the FLSA. Compl. ¶ 27–37. Although no finding of willfulness has been made, this Court cannot reach this merits issue at the preliminary certification stage, and the Court therefore overrules this objection. *See McKnight,* 756 F. Supp. 2d at 802 (citations omitted); *see also Tolentino,* 716 F. Supp. 2d at 655 (issuing notice for three-year period).

Second, Circle of Friends argues that the proposed notice "is improperly slanted towards the Plaintiff's position and foments litigation." Dkt. No. 12 p. 5 of 8. When exercising the authority to manage the form of the notice to potential opt-in plaintiffs, "trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffman-La Roche, Inc. v. Sperling,* 493 U.S. 165, 174 (1989) ("Court intervention in the notice process for case management purposes is distinguishable in form and function from the solicitation of claims."). Circle of Friends argues that the notice should state that recovery in this lawsuit is "not guaranteed or certain," and that Circle of Friends takes the position in this litigation that it "has paid employees for all compensable time, including overtime and Circle of Friends has complied with all requirements of the FLSA." Defs.' Objections to Pl.'s Proposed Notice p. 5,6 of 8, Dkt. No. 12. Because Circle of Friends's summary of its reasons for opposing this action is slightly more specific than that proposed by Perez without being misleading, the Court grants this request. *See Tolentino,* 716 F. Supp. 2d at 655 (citation omitted) ("allow[ing] the notice to contain a brief explanation of Defendant's bases for disputing liability"). However, a summary of Circle of Friends's alleged defenses adequately advises the potential opt-in plaintiff that recovery is not certain, and unnecessary repetition of Circle Friends's position in the notice jeopardizes the appearance of neutrality which this Court must safeguard. *See Hoffman-La Roche,* 493 U.S. at 173–74.

Finally, Circle of Friends objects that the proposed notice instructs the potential opt-in plaintiff to call Perez's attorney and thereby gives that attorney an opportunity to convince the recipient to opt into this case. Dkt. No. 12 ¶ 7(c). Circle of Friends also argues that the notice should state that Perez's attorney will

represent the recipient if he or she decides to join this action and Perez will make decisions on the opt-in plaintiff's behalf. *See id.* at 6. Alternatively, Circle of Friends proposes including the name, address, and phone number of Perez's attorney-in-charge and Defendants' attorney-in-charge. The Court agrees that "the notice must inform potential class Plaintiffs that they may contact any attorney of their choosing to discuss the case," including Perez's attorney-in-charge. *Tolentino*, 716 F. Supp. 2d at 655 (citing *Yaklin v. W-H Energy Servs, Inc.*, No. C-07-422, 2008 WL 1989795, at \*4 (S.D. Tex. May 2, 2008); *Moran v. Ceiling Fans Direct, Inc.*, No. H-06-0813, 2006 WL 2868939, at \*2 (S.D. Tex. Oct. 5, 2006). Circle of Friends cites no authority in support of the remainder of these requests, however, and the Court denies the request to include defense counsel's address because including it in the notices raises potential ethical concerns and risks confusing potential opt-in plaintiffs. *See, e.g., Behnken*, 997 F. Supp. 2d at 525 (collecting cases and stating that defendant "does not identify any authority supporting its position [that defense counsel's address should be included in notice], and the court is aware of none"); *Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 847 (N.D. Cal. 2010) ("Including contact information for defense counsel in the class notice risks violation of ethical rules and inadvertent inquiries, thus engendering needless confusion."); *see also* TEX. R. DISC. & PRF'L CONDUCT 1.06(a) (stating that an attorney cannot represent adverse parties in the same case). Accordingly, the Court sustains these objections in part and overrules them in part. The proposed notice must not include the contact information for Circle of Friends's attorney-in-charge or encourage the recipient to call Perez's attorneys, but the notice may set forth the phone number for Perez's attorney along with his other contact information. The Court overrules the remaining objections under this heading, Dkt. No. 12 at 6 ¶¶ (b), (c), (e), since they are unsupported by authority. *See* S.D. TEX. CIV. R. 7.4(c) (Responses "[m]ust include or be accompanied by authority.").

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Perez's motion for conditional certification, Dkt. No. 8, and overrules in part and sustains Defendants' objections

to Perez's proposed form of notice to the potential opt-in plaintiffs, Dkt. No. 12, as stated herein. Defendants must produce to Perez in a usable electronic format agreed to by the parties the names and last-known mailing addresses of all members of the conditionally-certified class within 14 days after the entry of this order. *See Tolentino*, 716 F. Supp. 2d at 655–56.

Finally, based on the conditional certification, the Court finds good cause to amend the scheduling order to reopen discovery. *See* FED. R. CIV. P. 16(b)(4). Consequently, the Court **DENIES AS MOOT** Defendant's Opposed Motion to Extend Scheduling Order Deadlines. Dkt. No. 16. The parties must confer and file with the Court a proposed notice to potential opt-in plaintiffs revised in accordance with the Court's rulings herein and a supplemental proposed joint discovery/case management plan within 14 days after the entry of this order. *See Tolentino*, 716 F. Supp. 2d at 656.

It is so ORDERED.

     **SIGNED** this 26th day of September, 2014.

Hilda Tagle
Senior United States District Judge